```
CASEY JENSEN, Esq., Bar No. 263593
cjensen@deconsel.com
STEPHEN ZELLER, Esq., Bar No. 265664
szeller@deconsel.com
members of
DeCARLO & SHANLEY
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California  90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

Attorneys for Plaintiffs, Carpenters Southwest
Administrative Corporation and Board of Trustees
For the Carpenters Southwest Trusts
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS,<br><br>Plaintiffs,<br><br>v.<br><br>J.S.I., INC., a Nevada domestic corporation; BRIANA LAYFIELD, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR:<br><br>1. DAMAGES FOR FAILURE TO PAY CONTRIBUTIONS AS TO J.S.I., INC., a Nevada domestic corporation;<br><br>2. BREACH OF SETTLEMENT AGREEMENT AS TO J.S.I., INC., a Nevada domestic corporation;<br><br>3. BREACH OF PERSONAL GUARANTEE AS TO BRIANA LAYFIELD, an individual |

**JURISDICTION**

1.  This is a civil action 1) to recover fringe benefit contributions, 2) for breach of settlement agreement, and 3) for breach of personal guarantee.  This action arises and jurisdiction of the court is founded on the Labor-Management Relations Act (of 1947) §301, as amended ("LMRA"), 29 U.S.C. §185a, and the

1 | Employee Retirement Income Security Act (of 1974) §§502 and 515, as amended
2 | ("ERISA"), 29 U.S.C. §§1132 and 1145.
3 |     Additionally, the Court has supplemental jurisdiction over the Breach of Settlement Agreement and Personal Guarantee claims, which arise under California law, based on 28 U.S.C. section 1367(a) as they are part of the same case or controversy as the Federal Law Claims.

## PARTIES AND OTHERS

2. CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3. At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as PLAINTIFFS.

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown to PLAINTIFFS, who therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when they have been ascertained.

6. At all relevant times, Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund were and are express trusts which exist

pursuant to section 302 of the LMRA, 29 U.S.C. §186, and multiemployer plans within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

7. At all relevant times, the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

8. At all relevant times, the Carpenters-Contractors Cooperation Committee ("CCCC") was and is a non-profit California corporation which exists pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978) for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

9. CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, the Contract Administration Trust for Carpenter-Management Relations, and the Carpenters-Contractors Cooperation Committee (collectively, the "PLANS"), and as such is a plan fiduciary within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

10. PLAINTIFFS have also been authorized to handle collection of the amounts owed to the Southern Nevada Carpenters Annuity Trust which exists pursuant to section 302 of the LMRA, 29 U.S.C. §186, and is a multiemployer plan within the meaning of section 3 of ERISA, 29 U.S.C. §1002 (The Southern Nevada Carpenters Annuity Trust is also included in the term "PLANS").

11. The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any

3

and all amounts due and owing to the respective PLANS by the employer as herein alleged.

12. Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America are labor organizations that are a party to the collective bargaining agreements involved.

13. At all relevant times, employer, J.S.I., INC., a Nevada domestic corporation; and DOES 1 through 4, inclusive ("EMPLOYER"), was a contractor engaged in the construction industry within the jurisdiction of the relevant UNIONS.

14. At all relevant times, BRIANA LAYFIELD, an individual, and DOES 6 through 10, was and is listed as President of EMPLOYER, and is referred to in this complaint as "INDIVIDUAL".

**FIRST CLAIM FOR RELIEF**
**(DAMAGES FOR FAILURE TO PAY CONTRIBUTIONS AS TO J.S.I., INC., a Nevada domestic corporation, formerly known as JOSEPH SATHER INSTALLATION)**
**OPERATIVE ALLEGATIONS**

15. On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, a Carpenters Master Labor Agreement dated September 6, 2006 ("MEMORANDUM AGREEMENT"). A true and correct copy is attached hereto marked as Exhibit "1", and incorporated herein by reference.

16. The MEMORANDUM AGREEMENT binds EMPLOYER to the terms and conditions of the Master Labor Agreement between the United Builders and Contractors Association, Inc. and the Southwest Regional Council of Carpenters, dated July 1, 2004, and any renewals or subsequent Master Labor Agreements, and the PLANS' agreements and any amendments, modifications,

extensions, supplementations or renewals of the PLANS' agreements (collectively referred to as "AGREEMENTS"). The PLANS are third party beneficiaries of the MEMORANDUM AGREEMENT and Master Labor Agreements.

17. The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

18. The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid. Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

19. In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the sum of $30.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater. This amount shall become due and payable to the CSAC as liquidated damages in addition to the unpaid contributions or contributions paid late.

20. EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of the AGREEMENTS.

21. EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing the PLANS from EMPLOYER the amounts set forth in Exhibit "2".

22. The AGREEMENTS require EMPLOYER to pay for the expense of auditing EMPLOYER business records if an audit by the PLANS indicates that EMPLOYER failed to report and pay all contributions.

23. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the unpaid contributions from the first of the month following the date due, at the rate prescribed by the AGREEMENTS.

24. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount equal to the greater of interest on the unpaid contributions as prescribed by section 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated damages provided for under the AGREEMENTS.

25. It has been necessary for PLAINTIFFS to engage counsel to bring this action to recover the delinquent fringe benefit contributions. Pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this matter.

26. The PLANS have complied with all conditions precedent.

27. CSAC has, concurrently with the filing of this complaint, served a copy of same upon the Secretary of Labor and Secretary of the Treasury.

## SECOND CLAIM FOR RELIEF
### (BREACH OF SETTLEMENT AGREEMENT AS TO J.S.I., INC., a Nevada domestic corporation, formerly known as JOSEPH SATHER INSTALLATION)

28. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 27 of their First Claim for Relief.

This Second Claim for Relief is asserted in the alternative to the First Claim for Relief if the First Claim is denied in whole or in part for any reason, as the balance alleged in the Second Claim for relied is also contained within the First Claim. The Second Claim for Relief is alleged as to EMPLOYER and DOES 1 through 4 for breach of settlement.

29. On or about November 13, 2018, PLAINTIFFS reached a settlement with EMPLOYER in order to pay off the delinquent contributions balance accumulated until the date of execution of the SETTLEMENT AGREEMENT incurred under the AGREEMENTS as detailed in the First Claim for Relief.

30. Pursuant to this settlement, EMPLOYER entered into a written SETTLEMENT AGREEMENT AND RELEASE ("SETTLEMENT AGREEMENT"), executed on or about November 13, 2018 in order to settle the outstanding balance incurred as part of the same case or controversy concerning payment of the delinquent contributions in order to avoid a previous Federal Court Action being filed against them to secure judgment for the unpaid contributions balance. A true and correct copy of the SETTLEMENT AGREEMENT is attached hereto, marked Exhibit "3", and incorporated herein by reference.

31. By this SETTLEMENT AGREEMENT, EMPLOYER promised they would pay to CSAC the sum of $157,209.24 in sixty (60) monthly payments of $3,130.58, including interest of 7.5% per annum on the declining balance, on the first day of each month, and that if payments were not received by CSAC in the full amount agreed upon on the payment due date, upon ten (10) days notice to EMPLOYER, CSAC could declare the payment plan in default.

32. EMPLOYER defaulted on the SETTLEMENT AGREEMENT by failing to make the required payments as they became due. PLAINTIFFS only received total payments of $43,828.12 under the SETTLEMENT AGREEMENT prior to the default.

33. PLAINTIFF'S counsel sent an official default email to EMPLOYER

dated March 13, 2020 giving the EMPLOYER notice of their breach of the SETTLEMENT AGREEMENT and demanding payment within ten (10) days as required under the settlement agreement. EMPLOYER failed to cure the default and make all payments due within the required ten (10) daye period. A true and correct copy of the draft email is attached hereto, marked Exhibit "4" and incorporated herein by reference.

34. PLAINTIFFS have complied with all conditions on their part to be performed under the terms of the SETTLEMENT AGREEMENT.

35. EMPLOYER failed to comply with the terms of the SETTLEMENT AGREEMENT and has therefore breached the agreement thereby owing damages for the amounts due thereunder.

### THIRD CLAIM FOR RELIEF
### (BREACH OF PERSONAL GUARANTEE -
### BRIANA LAYFIELD, an individual)

36. PLAINTIFFS reallege and incorporates herein by reference each and every allegation contained in paragraphs 1 through 35 of its First and Second Claims for Relief. This Third Claim for Relief is asserted as to BRIANA LAYFIELD, an individual ("BRIANA LAYFIELD") and DOES 6 through 10 for breach of personal guarantee.

37. On or about the date set forth thereon, BRIANA LAYFIELD entered into a written Personal Guarantee ("PERSONAL GUARANTEE") that guaranteed she would personally pay the accumulated delinquent contributions balance as a condition of the executed SETTLEMENT AGREEMENT as detailed in the SECOND CLAIM FOR RELIEF. A true copy of which is attached hereto, marked Exhibit "5", and incorporated herein by reference.

38. By this PERSONAL GUARANTEE, BRIANA LAYFIELD promised that she would pay CSAC the sum of $157,202.24 payable at $3,130.58 a month for

sixty (60) months beginning December 1, 2018, through October 1, 2023 with 7.5% interest accumulating in the declining balance. BRIANA LAYFIELD defaulted on the PERSONAL GUARANTEE by failing to make the required payments as they became due. PLAINTIFFS only received total payments of $43,828.12 under the PERSONAL GUARANTEE toward the guaranteed balance.

39. PLAINTIFF's counsel sent an official default email dated March 13, 2020 to BRIANA LAYFIELD concerning her breach of the PERSONAL GUARANTEE and demand for payment. Please refer to Exhibit "4".

40. PLAINTIFFS have complied with all conditions on their part to be performed under the terms of the PERSONAL GUARANTEE.

41. BRIANA LAYFIELD has failed to respond to the default notice or in any other way comply with the terms of the PERSONAL GUARANTEE.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

### FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF
### (DAMAGES FOR FAILURE TO PAY CONTRIBUTIONS)

1. For unpaid contributions in the sum of $105,005.30;
2. For interest and liquidated damages, as provided in the AGREEMENTS;
3. For audit costs;
4. For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate prescribed by law), or liquidated damages as provided in the AGREEMENTS, in an amount to be determined.

### FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF
### (BREACH OF SETTLEMENT AGREEMENT)

1. Alternatively to the First Claim for Relief, for unpaid amounts owed pursuant to breach of the SETTLEMENT AGREEMENT in the sum of $124,818.69

(as the amounts claimed are not cumulative);

2. For interest at 7.5% on the declining balance, as provided in the SETTLEMENT AGREEMENT.

## FOR PLAINTIFFS' THIRD CLAIM FOR RELIEF
## (BREACH OF PERSONAL GUARANTEE)

1. For unpaid amounts owed pursuant to breach of the PERSONAL GUARANTEE in the sum of $124,818.69 (the same amount as alleged in the Second Claim for Relief but as to individual Defendant Briana Layfield only );

2. For interest at 7.5% on the declining balance, as provided in the PERSONAL GUARANTEE.

## AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF

1. For reasonable attorneys' fees;
2. For costs of this action;
3. For further contributions according to proof; and
4. For such other and further relief as the court deems proper.

Dated: June 22, 2020

DeCARLO & SHANLEY,
a Professional Corporation

By: _____
CASEY JENSEN
Attorneys for Plaintiffs,
CARPENTERS SOUTHWEST
ADMINISTRATIVE CORPORATION
and BOARD OF TRUSTEES FOR THE
CARPENTERS SOUTHWEST TRUSTS